**Curtis JUDGE, Plaintiff,**

**v.**

**The CITY OF NEW YORK, the Police Department of the City of New York, and "John Doe," a Fictitious name Intended to Represent a Police Officer of the Police Department of the City of New York Whose Identity is Unknown, Defendants.**

**No. 85 Civ. 9740 (CHT).**

United States District Court,
S.D. New York.

March 2, 1991.

---

Stroock & Stroock & Lavan, New York City (Cynthia A. Fissel, of counsel), for plaintiff.

Victor A. Kovner, Corp. Counsel of the City of New York (Blanche Greenfield, Randie M. Liss, of counsel), for defendants.

## OPINION

TENNEY, District Judge.

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his civil rights during the course of his arrest and incarceration. Defendants now move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Curtis Judge ("Judge") alleges the following facts surrounding his arrest on December 13, 1991,[1] by a plainclothes New York City police officer at a pharmacy located at 282 Lenox Avenue in New York City. Deposition of Curtis Judge ("Judge Dep.") (taken on May 11, 1990) at 9; Complaint ¶ 5.

On the afternoon of December 13, 1991, Judge entered a pharmacy located at 282 Lenox Avenue, to fill a prescription for antibiotic cold medication. Affidavit of Curtis Judge ("Judge Aff.") (sworn to Oct. 17, 1991) ¶ 4, Ex. A. While waiting for the prescription to be filled, he walked into a nearby coffee shop where he got something to eat, and then returned to the pharmacy. *Id.* Upon re-entering the pharmacy, Judge was suddenly pushed up against the door with his hands pinned behind his back, thrown to the floor, and hit several times over the top of his head with a pistol.

1. Although plaintiff alleges in his complaint that the arrest occurred on December 14, 1982, the parties have stipulated that the date of the arrest was December 13, 1982. Deposition of Curtis Judge ("Judge Dep.") (taken on May 11, 1990) at 9.

*Id.* ¶ 5–6; Judge Dep. at 41–44, 60–63, 68–69. Judge was then picked up off the floor, handcuffed, and placed in a police car. Judge Aff. ¶ 8. Judge's assailant was a plainclothes New York City police officer who was later identified as John Byrnes.[2] The only witnesses to the incident, were the pharmacist and his assistant. *Id.* ¶ 8.

Officer Byrnes and another officer then transported Judge to a precinct station on the east side of Manhattan. *See* Judge Aff. ¶ 8–9. Judge alleges that on the way to the station, no one explained to him why he was being arrested or what his rights were. *Id.* ¶ 10. In addition, Judge alleges that while in the police car, Officer Byrnes "made some vulgar remarks to [him] in the nature of racial slurs against black people." *Id.* ¶ 10.

After they arrived at the precinct station, Judge requested medical attention because his head was bleeding. *Id.* ¶ 11; Complaint ¶ 7, 8; Judge Dep. at 57. Officer Byrnes, however, denied his request, telling him that "it would just delay the process of ... getting out of jail." Judge Aff. ¶ 11; Judge Dep. at 57. Judge was kept at the precinct station for approximately four to six hours. Judge Aff. ¶ 11.

Judge was then transported to One Police Plaza, during which time Officer Byrnes continued to be verbally abusive. *Id.* ¶ 12; Judge Dep. at 75. Although in need of medical attention, Judge states that he did not ask for any because he was afraid—based on what Officer Byrnes had told him—that doing so would merely prolong his detention. Judge Dep. at 74–76. Judge was then transported to Rikers Island Detention Facility ("Rikers"). Complaint ¶ 9. While at Rikers, Judge was given Methadone to allay the drug-related withdrawal symptoms he was experiencing.[3] Judge Dep. at 77, 82–84. Judge also received a physical examination, but at no time did he complain of or request medical attention for the injuries to his head. *Id.* at 77–78, 82–84.

After four to five days at Rikers, Judge was released from custody on bond. Complaint ¶ 10; Judge Dep. at 76–77. On December 19, 1982, Judge went to the Emergency Room of St. Luke's–Roosevelt Hospital ("St. Luke's") to seek medical treatment for his head injury, which was causing him to experience headaches and some hearing loss. Judge Aff. ¶ 14. After receiving a physical examination and having X-rays taken, Judge was told by the Emergency Room doctor that he had fractured his skull.[4] *Id.* ¶ 14, Ex. B. Judge remained at St. Luke's for approximately twenty-four hours. *Id.*

On December 20, 1982, Judge appeared in the New York City Criminal Court before the Honorable Judge Lang, where he learned that he had been arrested for and charged with the sale of a controlled substance. Judge Dep. at 84–85. Judge Lang then dismissed all pending charges against Judge. Complaint ¶ 10; Judge Dep. at 84–85.

On December 16, 1985, Judge commenced this action against the City of New York, the Police Department of the City of New York, and "John Doe," a police officer. In his complaint, Judge alleges that the events surrounding his arrest and incarceration violated his civil rights in contravention of 42 U.S.C. § 1983. Judge also alleges that the conduct of "John Doe"—i.e., effectuating an allegedly unlawful arrest and engaging in allegedly excessive and unnecessary force—was part of a widespread and institutionalized custom and practice on the part of the municipal defendants. Complaint ¶ 14.

## DISCUSSION

A court may grant summary judgment if "there is no genuine issue as to any fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

2. Officer Byrnes was never served process, and thus, is not a defendant in this action.

3. At the time of his arrest, Judge was enrolled in a Methadone program to help cure his drug addiction. *See* Judge Dep. at 82–84.

4. The court notes that the report made by the doctor at St. Luke's is *illegible.* However, because the court must construe all ambiguities in favor of the nonmovant, it accepts the plaintiff's representation that the doctor concluded that Judge had a fractured skull.

(1986). Although the burden is on the movant to show that there is no genuine issue of material fact, the movant does not necessarily have to negate every one of the nonmovant's claims, but rather, has only to show that there is an absence of evidence to support the nonmovant's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. In deciding a motion for summary judgment, the court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmovant. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. Rather, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

 In an action pursuant to 42 U.S.C. § 1983, a municipality may not be held liable for the wrongful conduct of its agents or employees based solely on the theory of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). To hold municipal defendants liable for the acts of its employees, a plaintiff must prove (1) that the actions in question were the result of an official policy or custom, (2) that this official policy or custom "was the moving force of" his or her injuries, and (3) that the injuries amounted to a violation of his or her constitutional rights. *Id.* at 691–94, 98 S.Ct. at 2036–37. Thus, the core issue in any § 1983 case is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

 Where, as here, the plaintiff does not allege the existence of an explicitly articulated municipal policy, a court can infer a municipal policy from informal acts or omissions of the municipality's supervisory officials, including the officials' failure to adequately train their employees. *See id.* at 387, 109 S.Ct. at 1204; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Such a failure to train, however, will only establish municipal liability if the failure evidences "a deliberate indifference to the rights of persons with whom the police come into contact." *Canton,* 489 U.S. at 388, 109 S.Ct. at 1204. Furthermore, an official policy cannot be inferred on the basis of a single incident of illegal conduct by a municipal employee. *Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Thus, the issue in this case is whether the facts cited by Judge are sufficient to establish a deliberate indifference to constitutional rights so as to permit an inference of an unconstitutional municipal policy or custom which caused the alleged violation of his civil rights.

 Judge essentially argues that the municipal policy can be inferred from the defendants' failure to train, supervise, and discipline its officers. In support of his "failure to train" argument, Judge cites Officer Byrnes' testimony regarding the training he received at the Police Academy in 1968 regarding the use of excessive force. Officer Byrnes states that "[y]ou have to use whatever force is necessary," and that the amount of force necessary is determined by "when somebody stops fighting me." Deposition of John A. Byrnes ("Byrnes Dep.") (taken June 17, 1991) at 31. Judge also points to the fact that even though Officer Byrnes received additional in-service training regarding arrest techniques, he could not recall the exact dates of the training sessions or what subjects were covered. *See* Byrnes Dep. at 32–33. In support of his "failure to supervise" argument, Judge asserts that Officer Byrnes was the type of officer known as a "cowboy"—"meaning that they portray a tough image like they were a cowboy in the wild west"—who "have a reputation in the community and among police officials as being particularly brutal." [5] Judge Aff. ¶ 6. Presumably, Judge's argument vis-a-vis the municipal defendants is that if they

---

5. Judge described Officer Byrnes on the day of the arrest as "wearing a plaid flannel shirt, dungarees, a large metal belt buckle and cowboy boots." Judge Aff. ¶ 6.

properly supervised their employees, this type of officer would not exist. Although Judge never explicitly asserts a failure to supervise argument, the court construes his reliance on the unlawful conduct of the "cowboy" officers as making such an argument. As evidence of the defendants' failure to discipline its employees, Judge points out that there was no departmental investigation of the events surrounding Judge's arrest, and that Officer Byrnes was never disciplined for his conduct. *See* Byrnes Dep. at 26–27.

The court agrees with defendants that Judge has failed to present sufficient evidence to allow an inference of an unconstitutional policy or custom on the part of the municipal defendants. Judge's argument that Officer Byrnes received inadequate training is based only on the conclusory assertions of the plaintiff himself. The mere fact that Officer Byrnes does not know the legal catch-words regarding the constitutional use of force, and that he did not remember the exact dates and material covered in his training does not establish that his training was inadequate. Judge's contention that Officer Byrnes was a "cowboy" officer—a type of officer known to be particularly brutal—is unsubstantiated hearsay which by itself, cannot establish that the defendants failed to supervise their employees. Lastly, Judge's argument that Officer Byrnes was not investigated or disciplined for this incident also fails to establish an official policy or custom. Judge presents no evidence that a civilian complaint was lodged against Officer Byrnes which the defendants neglected to investigate, or that there had been other incidents involving Officer Byrnes which would have put his superiors on notice of potentially illegal conduct. *See* Byrnes Dep. at 27. Thus, the court concludes that none of the facts cited by Judge establish a failure by the defendants to train, supervise, or discipline its employees.

Plaintiff relies on *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979), in arguing that an official policy can be established by a single unconstitutional violation by a municipal employee if the circumstances surrounding the violation are particularly egregious or extraordinary. *Id.* at 1246. This principle, however, was severely limited by the Supreme Court in *Oklahoma v. Tuttle*. 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In *Tuttle*, the Court rejected of the trial court's instruction that the jury could infer from a "single, unusually excessive use of force ... that it was attributable to inadequate training or supervision amounting to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge." 471 U.S. at 821, 105 S.Ct. at 2435. Thus, the Court concluded that

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise, the existence of the unconstitutional policy, and its origin, must be separately proved.

*Id.* at 823–24, 105 S.Ct. at 2436; *see also Canton*, 489 U.S. at 390–91, 109 S.Ct. at 1205–07 ("[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, where the officer's shortcomings may have resulted from factors other than a faulty training program").

In sum, plaintiff has failed to show that defendants' training, supervision, or discipline of its employees evidenced a deliberate indifference to the rights of their citizens so as to permit an inference of an unconstitutional municipal policy. Thus, because plaintiff has not presented specific facts to show that there is a genuine issue for trial, defendants' motion for summary judgment is granted.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted and the plaintiff's claims against them are dismissed.

So ordered.